UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | } | |
| | } | |
| VS. | } | CRIMINAL ACTION NO. H-05-351-2 |
| | } | |
| DONG DANG HUYNH | } | |

**OPINION & ORDER**

Pending before the Court is Defendant Dong Dang Huynh's ("Dong") post-hearing brief and provisional motion for a new trial (Doc. 323), incorporating Dong's previously filed notice of conflict of interest (Doc. 297) and motion for leave to file an out-of-time motion for a new trial (Doc. 302). Upon review and consideration of this motion, the Government's response (Doc. 324), incorporating its previously filed opposition to the notice and first new trial motion (Doc. 308), Dong's reply (Doc. 325), the testimony taken at the post-trial hearing, and the relevant legal authority, the Court finds that Defendant's request for a new trial should be denied.

I. Procedural Background and Relevant Facts

On April 6, 2004, Dong Dang Huynh, his nephew Duc Dang Huynh ("Duc"), and several others were indicted on multiple counts of money laundering, conspiring to commit money laundering, and failure to file required currency transaction reports in violation of 19 U.S.C. § 1956(a)(3)(B) and (C). (Case 144, Doc. 1.) The case was designated number H-04-CR-144 ("Case 144") and assigned to Judge Werlein. Dong retained Richard Haynes ("Haynes") and retired U.S. District Judge John Singleton ("Judge Singleton") to represent him and retained Walter Boyd III ("Boyd") to represent Duc. (Doc. 318 at 80.) Dong paid for the services of both lawyers and also made regular deposits into the Huynh Evergreen Trust account from which the

attorneys drew for expenses. (Doc. 297, Exh. 1, Dong Affidavit at 1; Doc. 318 at 80; Doc. 320 at 427–32, 478; Doc. 323, Attachment 1, Timeline.)

Approximately one year later, on May 9, 2005, a superseding indictment in Case 144 was returned against Duc and several others. (Case 144-2, Doc. 147.) Soon thereafter Duc negotiated a plea agreement with the Government and, on June 2, 2005, pleaded guilty to count one of the superseding indictment, charging conspiracy to fail to file currency transaction reports. (Case 144-2, Docs. 167–169.)

In his affidavit, Dong claims that he did not know that Duc was cooperating with the government. (Doc. 297, Exh. 1, Dong Affidavit at 3; Doc. 318 at 92–94) This assertion is not credible. (*See* Doc. 320 at 423–25, 451, 476–77; Doc. 318 at 84; Doc. 319 at 358–359.) The Court finds that Dong knew Duc had pleaded guilty, was cooperating with the government, and would testify against him at trial.

On June 13, 2005, Haynes and Boyd formed the partnership of Haynes, Boyd & Associates, P.C., giving rise to the putative conflict of interest at issue here. (Doc. 319 at 218–19; Doc. 320 at 407–08.) Dong knew of their partnership. (Doc. 297, Exh. 1, Dong Affidavit at 2–3.)

Dong was not charged in the superseding indictment in Case 144. Instead, on August 24, 2005, Dong and Thi Phuong Mai Le ("Mai Le") were charged in a new indictment. (Doc. 1.) That case was designated number H-05-CR-351 ("Case 351") and assigned to this Court. The indictment against Dong in Case 144 was subsequently dismissed on October 3, 2005. (Case 144-1, Doc. 201.) Despite Dong's and Duc's indictment in separate cases, and the Government's attempt to distinguish them, both cases arose from the same basic facts: namely, that with the

assistance of Duc, Mai Le, and other employees and relatives, Dong ran a sizeable drug money laundering operation through his company, U.S. Tours and Remittance.

After several requests to delay Duc's sentencing (Case 144-2, Docs. 198, 208, 250, and 272) because of his expected testimony against Dong in Case 351, on April 13, 2006, Judge Werlein sentenced Duc to 42 months' imprisonment in Case 144 (Case 144-2, Doc. 275), which Duc began to serve on August 14, 2006 (Case 144-2, Doc. 283).

On May 11, 2007, Boyd sent letters to thirty-eight clients advising that the Haynes, Boyd & Associates partnership had ceased operations. (Doc. 319 at 212, 308–10.) Dong and Duc were not among the recipients of the letter; Duc was in prison at the time. (*See id.* at 309.)

More than one year later, on June 2, 2008, Dong's trial in Case 351 began. At trial, Dong was represented by Haynes and Judge Singleton. Haynes took ill soon after the trial began, Judge Singleton did not feel confident to proceed without Haynes, and so the trial did not resume until July 7, 2008. (Doc. 320 at 454–55, 479–80; Doc. 268 at 6–7.) Throughout the trial, Dong's defense was that he had been ignorant of any illegal activity. Dong took the stand and blamed Duc for any illegal transactions that occurred. Duc testified against Dong. On July 18, 2008, a jury convicted Dong of money laundering, conspiracy to commit money laundering, and conspiracy to defraud the United States by failing to file currency transaction reports. (Doc. 187.)

Soon after Dong's conviction, Judge Werlein reduced Duc's sentence to time served in response to the Government's motion under Fed. R. Crim. P. 35(b)(2)(b) pursuant to Duc's substantial assistance in Case 351. (Case 144, Docs. 301–305.) Boyd was listed as counsel of record on the Government's motion to reduce Duc's sentence. (*Id.*)

On September 10, 2009, this Court sentenced Dong to 264 months' imprisonment. (Doc. 289.) At sentencing, Dong was represented by David Gerger.

Regrettably, the possibility of a conflict of interest between Haynes and Boyd was not brought to the Court's attention before Dong's trial so that the Court could explore the nature of any conflict and, if necessary, hold a *Garcia* hearing to verify Dong's understanding and consent. *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975). At the post-trial hearing, Assistant U.S. Attorney Joseph Magliolo explained that he learned of the Haynes and Boyd partnership after Duc pleaded guilty[1] and that, prior to Dong's trial, he was informed that the partnership was defunct. (Doc. 320 at 485–86.)

Now represented by Solomon and Adrienne Wisenberg, Dong requested a post-trial hearing regarding the alleged conflict of interest on October 9, 2009. (Doc. 297.) The Court heard testimony on October 16, 20, and 21, 2009. (Docs. 318–20.) Dong requests a new trial due to the alleged conflict of interest between his primary attorney, Haynes, and Duc's attorney, Boyd, which he contends violated his Sixth Amendment right to counsel. The Government argues there was no actual conflict of interest between the two attorneys, and, even if there was, it had no adverse impact on Dong's representation.

II. Legal Standard for a New Trial

The Sixth Amendment guarantees criminal defendants the right to competent and conflict-free representation. *Wood v. Georgia*, 450 U.S. 261, 271 (1981). "Under the Sixth Amendment, if a defendant has a constitutional right to counsel, he also has a corresponding right to representation that is free from any conflict of interest." *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993) (citing *Wood*, 450 U.S. at 271). A new trial is warranted where a

---

[1] The Haynes and Boyd partnership was formed on June 13, 2005, shortly after Duc pleaded guilty on June 2, 2005.

defendant can show that his attorney "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350 (1980)). However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. "[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692.

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Sullivan*, 446 U.S. at 348. In the Fifth Circuit, establishing a Sixth Amendment violation under *Sullivan* requires that the defendant "show that his trial attorney was acting under the influence of an actual conflict of interest that adversely affected his performance at trial." *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005). This is a two part inquiry, requiring the defendant to demonstrate that "(1) his counsel acted under the influence of an actual conflict; and (2) that conflict adversely affected his performance at trial." *United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008).

Ethics rules are not dispositive of a conflict of interest analysis under the Sixth Amendment. *Mickens v. Taylor*, 535 U.S. 162, 176 (2002) (stating that a Sixth Amendment analysis under *Sullivan* is not designed "to enforce the Canons of Legal Ethics, but to apply need prophylaxis in situations where *Strickland* itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment right to counsel."); *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) ("[B]reach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel."); *Beets v. Scott*, 65 F.3d 1258, 1268 (5th Cir. 1995)

(rejecting the contention that defense counsel's alleged ethical breach of the duty of loyalty rendered his counsel ineffective and stating that "not every potential conflict, even in multiple representation cases, is an 'actual' one for Sixth Amendment purposes.").

It is settled law that one attorney can represent codefendants in the same proceeding. "Assuming without deciding that two law partners are considered as one attorney, it is settled that 'requiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel.'" *Burger v. Kemp*, 483 U.S. 776, 783 (1987) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978)). Furthermore, a conflict of interest is not automatically inferred even when law partners jointly represent codefendants with antagonistic defenses at separate trials. *Id.* at 783–85 (finding no actual conflict where partners represented codefendants with antagonistic defenses in the same case, discussed each other's cases and shared common research). Instead, "a case-by-case inquiry is required, rather than simply adopting an automatic rule of reversal." *Mickens*, 535 U.S. at 177.

"[W]hether a conflict existed and whether the conflict had an adverse effect are mixed questions of law and fact . . . ." *Infante*, 404 F.3d at 391 (citing *Strickland*, 466 U.S. at 698; *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000)). "A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties." *Infante*, 404 F.3d at 392 (quoting *United States v. Medina*, 161 F.3d 867, 870 n. 1 (1998) (quoting *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985))) (alteration in original) (internal quotation marks omitted). "Whether a conflict of interest exists depends on a number of factors, including, but not limited to, whether the attorney has confidential information that is helpful to one client but

harmful to another; whether and how closely the subject matter of the multiple representations is related; and whether the prior representation has been unambiguously terminated." *Id*.

Regarding the appropriate test to apply to the alleged conflict in Dong's case, the Court first notes that the *Strickland* standard generally applicable to Sixth Amendment ineffective assistance of counsel claims is inapposite. "*Strickland* requires a showing that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, as well as a showing of prejudice, which is defined as a reasonable probability that counsel's error changed the result of the proceeding." *Perillo*, 205 F.3d at 781. Instead, the *Sullivan* standard "permits a defendant who raised no objection at trial to recover upon a showing that an actual conflict of interest adversely affected counsel's performance." *Id.* In the Fifth Circuit, the *Sullivan* standard applies to Dong's claims notwithstanding the more recent decision in *Mickens*. *See Infante*, 404 F.3d at 391; *Perillo*, 205 F.3d at 797–99. "In *Mickens*, the Supreme Court noted that it has never extended [*Sullivan*] to cases of successive, as opposed to concurrent, representation, and the Court expressed concern about whether [*Sullivan*] or *Strickland* provides the proper standard for resolving conflict-of-interest claims involving successive representation." *Infante*, 404 F.3d at 391 n. 12. The Government argues, and for reasons explained below the Court agrees, that Dong's alleged conflict falls in the successive, rather than concurrent, representation category. Nevertheless, the Court is "bound by circuit precedent applying [*Sullivan*] to cases of successive representation." *Id.* Therefore, the *Sullivan* standard applies.

III. Discussion

Dong argues he was denied his constitutional right to effective assistance of counsel because his attorney labored under a conflict of interest. To prevail on his ineffective assistance

of counsel claim, Dong must show that Haynes acted under the influence of a conflict of interest that adversely affected his performance at trial. *Infante*, 404 F.3d at 390–91. Dong "need not show prejudice in the sense that the outcome of the proceeding would have been different if it were not for his attorney's conflict of interest." *Id.* at 391 (citing *Perillo*, 205 F.3d at 781–82). If Dong can establish a conflict that adversely affected Haynes' performance, "prejudice is presumed without any further inquiry into the effect of the actual conflict on the outcome of the defendant's trial." *Perillo*, 205 F.3d at 781–82. In order to prevail on his motion for a new trial, then, Dong must show: (1) a genuine conflict of interest between Haynes and Boyd; and (2) that the conflict adversely affected Haynes' representation of Dong at trial.

A.  The Haynes and Boyd Partnership

Dong hired Boyd to represent his nephew Duc. This strategy gave Dong access to information about Duc's cooperation with the Government he would not otherwise have had. Haynes and Boyd formed their partnership shortly after Duc pleaded guilty. Dong knew that Duc had pleaded guilty, was cooperating with the government, and that Duc's testimony would be damaging. In effect, Haynes and Boyd's partnership operated to provide Dong with confidential information about Duc rather than vice versa. While the partnership existed, there was no legal adversity between Dong and Duc. When Duc later testified against Dong, the Haynes and Boyd partnership was already defunct for more than one year.

To the extent that the Haynes and Boyd partnership is legally treated as a single attorney representing Dong and Duc, Duc must be considered a former client at the time of Dong's trial; the constructive representation of Duc by Haynes unambiguously terminated more than one year before Haynes represented Dong at trial. The alleged conflict of interest at issue therefore falls

in the successive rather than concurrent representation category. Nevertheless, for the reasons explained *supra*, *Sullivan* applies.

Professor Ronald Rotunda, Dong's expert on ethical conflicts, was under the mistaken impression that the Haynes and Boyd partnership had persisted through trial when developing his opinion. (Doc. 297, Exh. 2 at 6, 8.) At the hearing, Prof. Rotunda stated that termination of the partnership would not alter his opinion. (Doc. 318 at 25–27.) In any event, Prof. Rotunda opined regarding ethical standards and the rules of professional responsibility that bind attorneys, not whether Dong's Sixth Amendment rights were violated. (Doc. 318 at 56.) While the Haynes and Boyd partnership's temporally overlapping representation of Dong and Duc might have violated ethics rules, that is not the question before this Court.

Dong's and Duc's defenses were not antagonistic as Duc did not have a defense; he pleaded guilty. It is of course obvious that Duc was an adverse witness against Dong, but this does not automatically give rise to a conflict of interest in their representations. This is particularly true, where, as here, the defendant's trial did not begin until three years after the adverse witness pleaded guilty, two years after he was sentenced, and one year after the allegedly conflicted partnership dissolved. Under these facts, there is no conflict.

B. Adverse Effect

Though the Court finds no genuine conflict of interest between Haynes' representation of Dong and Boyd's representation of Duc, it will nevertheless proceed to the second prong of the *Sullivan* analysis, which requires Dong to show that the alleged conflict of interest adversely affected Haynes' performance. "An adverse effect on counsel's performance may be shown with evidence that counsel's judgment was actually fettered by concern over the effect of certain trial

decisions on other clients." *Perillo*, 205 F.3d at 807 (internal quotation marks omitted). When a defendant's claim is premised "upon what a conflicted lawyer failed to do on his or her behalf, the [defendant] must generally establish adverse effect by demonstrating that there was some plausible alternative defense strategy that could have been pursued, but was not, because of the actual conflict." *Id.*

Dong's reply (Doc. 325) takes issue with the second prong of the *Sullivan* test as restated by the Fifth Circuit in *Infante* and *Burns*, which require that a conflict adversely affect counsel's performance "at trial." *Infante*, 404 F.3d at 391; *Burns*, 526 F.3d at 856. *Sullivan* does not specify the time at which a conflict must adversely affect a defendant's representation to give rise to a Sixth Amendment violation; it is understood that the Sixth Amendment right to counsel applies at all critical stages of the criminal justice process. *See Maine v. Moulton*, 474 U.S. 159, 170 (1985) (stating that the right to "assistance of counsel is shaped by the need for the assistance of counsel, we have found that the right attaches at earlier, critical stages in the criminal justice process where the results might well settle the accused's fate and reduce the trial itself to a mere formality." (internal quotation marks omitted)). This is not an issue that must be resolved here, however, as Dong fails to point to any specific instances where he claims Haynes' performance was adversely affected, except at trial.

First, because Duc pleaded guilty before the partnership was formed, this cannot be the basis of an adverse effect. Second, at the post-trial hearing it was clear that Dong's attorneys encouraged him to accept a plea deal with the Government, undermining the contention that his attorneys were working to help Duc receive the benefits of a substantial assistance motion from the Government. (Doc. 319 at 357, 362.) Nevertheless, Dong argues that what he considers Haynes' less than vigorous cross-examination of Duc at Dong's trial was designed to ensure that

Duc would benefit from a substantial assistance motion. In particular, Dong questions why Haynes did not cross-examine Duc regarding his plea agreement with the Government and the possibility that his sentence might be reduced in exchange for his testimony against Dong. (Doc. 320 at 439–43.)

The jury had knowledge of Duc's plea agreement through his direct testimony, and Haynes, in closing arguments, pointed out that Duc was not an impartial witness because he stood to gain from testifying against Dong. (Doc. 271 at 157–158; Doc. 285 at 97–98, 105.) At the post-trial hearing, Haynes testified that he believed impeaching Duc's credibility on cross-examination by exploring whether he had married a second wife without divorcing his first wife, literally calling him a bigamist, was a more effective strategy than attacking Duc on the plea agreement. (Doc. 320 at 438–439, 444, 448–49l; Doc. 272 at 9–17)  This does not constitute failure to pursue an alternate defense strategy as, for example, might steering clear of a line of questioning designed to show that no conspiracy existed, which would negate an essential element of the crime. Instead, Haynes simply elected an alternate form of impeachment questioning. Had Haynes entirely neglected to impeach Duc's credibility, that might call into question whether he was laboring under loyalties divided between Dong and Duc, but simply not pursuing a particular avenue of impeachment that Haynes believed less effective does not give rise to such questions. Dong has therefore failed to satisfy both prongs of the *Sullivan* test.

IV. <u>Conclusion</u>

Accordingly, the Court hereby ORDERS that Defendant Dong Dang Huynh's post-hearing brief and provisional motion for a new trial (Doc. 323), incorporating Dong's previously

filed notice of conflict of interest (Doc. 297) and motion for leave to file an out-of-time motion for a new trial (Doc. 302), is DENIED.

    SIGNED at Houston, Texas, this 10th day of November, 2009.

                                                MELINDA HARMON
                                    UNITED STATES DISTRICT JUDGE